IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CINDA M.,[1]

       Plaintiff,

       v.                                                                  Case No. 3:20-cv-00895-JR

COMMISSIONER OF SOCIAL                                        OPINION AND ORDER
SECURITY ADMINISTRATION,

       Defendant.

RUSSO, Magistrate Judge:

       Plaintiff Cinda M. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disabled Widow's Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

       Born in September 1959, plaintiff alleges disability between October 1, 2009 and December 31, 2010, due to Huntington's disease. Tr. 521. Her application was denied initially and upon reconsideration. Tr. 20, 605. On February 22, 2020, a hearing was held before an Administrative Law Judge ("ALJ"), who considered testimony from previous hearings in the proceeding to render a decision. Tr. 514. On March 16, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 524. Plaintiff appealed directly to this Court.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party in this case.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (citations omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. § 416.920). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i), (b).

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §

416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii), (c).

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41 (citing 20 C.F.R. § 416.920(d)). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv), (f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141-42 (citing 20 C.F.R. § 416.920(e)).

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 517. At step two, the ALJ determined plaintiff's Huntington's disease was medically determinable and severe. *Id.* At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 520. The ALJ further found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional

limitations: "The claimant must avoid exposure to unprotected heights, and moving machinery." *Id.* And finally, at step four, the ALJ found the claimant was capable of performing past relevant work as a hair stylist and grocery clerk, and that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). *Id.* at 523.

## DISCUSSION

Plaintiff argues that the ALJ erred because: (1) he rejected the testimony of Drs. Joanne O'Leary, Keiran Tuck, and James Bryan without giving specific and legitimate reasons supported by substantial evidence; (2) the opinion of the Social Security Administration's medical expert Dr. James Haynes is not substantial evidence because the medical expert testified, in part, that the medical record was insufficient for him to form a medical opinion; and (3) Dr. Haynes' opinion is not substantial evidence because it is based on a factually inaccurate assessment of the medical record. ECF 22 at 2.

## I.    ALJ Gave Specific and Legitimate Reasons to Give Little to No Weight to Drs. O'Leary, Tuck, and Bryan's Testimony

Plaintiff asserts the ALJ erred by rejecting Drs. O'Leary, Tuck, and Bryan's opinion testimony without proper support from the record evidence. In this context, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although an ALJ must give a "clear and convincing" reason for rejecting a doctor's uncontradicted medical opinion, the ALJ's reason for rejecting a doctor's contradicted medical opinion need only be "specific and legitimate." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). A treating doctor may offer an opinion about an individual's functioning before the doctor first treated or examined the individual, but such opinions are "scarcely different from any non-treating physician['s] with respect to that time period."

*Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989). When a non-examining medical expert testifies and is subject to cross-examination, an ALJ may credit the medical expert's opinion over that of other doctors. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995). Here, the ALJ supported his rejection of Dr. O'Leary's, Dr. Tuck's, and Dr. Bryan's contradicted opinions with specific and legitimate reasons supported by substantial evidence.

The parties' dispute over the reasonableness of the ALJ's decision boils down to whether he properly credited one doctor's retroactive diagnosis of the severity of plaintiff's Huntington's disease over another's. On the one hand, Drs. Tuck, O'Leary and Bryan supported their theory that plaintiff's Huntington's disease was symptomatic and disabling since at least 2009 by citing treatment records from 1999-2002 that mentioned complaints of limb "jerks" and depression. Tr. 508, 881. The ALJ noted that this was an important element of their opinions as it justified projecting disabling limitations back before their treatment relationships began. *See id.* However, the ALJ reasonably found their analysis unconvincing because it overlooked important caveats from those treatment records. Tr. 521-22. The ALJ also noted that plaintiff's work history was inconsistent with the doctors' hypothesis, again citing record evidence for this conclusion. Tr. 523.

As the ALJ explained, plaintiff's mention of limb jerks from 2000 to 2002 never resulted in a diagnosis or meaningful work up. Tr. 611. Plaintiff reported these limb jerks on a few occasions, but the clinicians did not observe any involuntary movements, even during lengthy treatment sessions. Tr. 454, 489, 969-70. Those movements often occurred in the context of drug or alcohol use. Tr. 454, 969-70. Plaintiff also noted to one clinician that "she may be over-vigilant i[n] monitoring her behavior because of her family history." Tr. 454. Moreover, when plaintiff sought treatment in 2012, she reported to clinicians that her involuntary movements began in 2011,

and not that they had been present for over a decade. Tr. 307. This last fact, alone, provides a basis to give little weight to the opinions of Drs. Tuck, O'Leary and Bryan.

Similarly, the ALJ reasonably discounted Drs. Tuck, O'Leary and Bryan's opinions by recognizing that the notations about mental issues in plaintiff's treatment records are largely in the context of substance abuse issues. Tr. 396, 400, 842. Plaintiff's treatment for these issues focused primarily on substance abuse treatment. Tr. 401, 404-06, 842. Additionally, her symptoms during this period were often described as mild (Tr. 401, 460), improved (Tr. 434, 454, 484), or non-existent (Tr. 489). Given this record, the ALJ reasonably found that plaintiff's medical records from 1999-2002 did not substantiate the onset of symptoms from Huntington's disease as early as Drs. Tuck and O'Leary asserted.

The ALJ also cited the fact that plaintiff's work and school activity from 2005 to 2008 is inconsistent with Drs. Tuck, O'Leary and Bryan's opinions. Tr. 613. Although plaintiff challenges this finding because her work and college attendance were before the relevant period, it was a valid consideration for the ALJ. *See* ECF 22 at 12-13. According to Drs. Tuck, O'Leary and Bryan, plaintiff was manifesting both physical and mental symptoms of Huntington disease by 2002. Tr. 508-10, 881. Additionally, they believed plaintiff was likely disabled due to cognitive limitations before her physical symptoms even manifested. Tr. 509-10, 880. Following that logic, the ALJ found it unlikely plaintiff would have been able to earn an Associate's Degree in Billing and Health Care Administration in 2007. Tr. 37, 915. Additionally, plaintiff worked part-time from 2005 to early 2008. Tr. 40-41, 215-16. The ALJ reasonably found that plaintiff's ability to earn a college degree in 2007 while simultaneously working part-time was not consistent with Drs. Tuck, O'Leary and Bryan's theory of disease progression, and cited this record evidence when deciding to give their opinions little weight. Tr. 613. Under the somewhat unusual facts of this case, where

there was no medical treatment during the relevant period and the ALJ was confronted with conflicting theories about disease progression, the ALJ reasonably considered record evidence of plaintiff's school and work activity before the alleged onset date in crediting one medical opinion over the other. While the dearth of evidence from the relevant period forced all doctors to rely on their understanding of typical disease progression to some degree, the ALJ reasonably found that Dr. Haynes' opinion was the one most consistent with the evidence.

Plaintiff also objects to the ALJ's characterization of the medical evidence after the relevant period. ECF 22 at 15, 17-18. The ALJ wrote that plaintiff's medical records from 2016 and 2017 indicate "essentially the only signs of Huntington's disease being a non-bothersome bilateral tremor and the claimant's balance being off a bit." Tr. 613. And although the ALJ did not list the Luria test performed by Dr. Brooke Walter in 2017, Dr. Walter did not find these test results significant enough to allow him to offer an opinion about plaintiff's functioning more than six years earlier. Tr. 975. As with so much of the evidence in this case, because Dr. Walter's opinions relied on a scant treatment record from the relevant time period, and because she declined to offer an opinion about plaintiff's functioning before 2017, the ALJ reasonably rejected Dr. Walter's opinions in favor of Dr. Haynes' diagnosis. Tr. 518. The ALJ's interpretation of the medical evidence was rational and based on record evidence. Ninth Circuit precedent requires this Court to give that interpretation deference. *Burch*, 400 F.3d at 679.

In short, because the ALJ reasonably resolved the conflicts between medical opinions, and substantiated his choice of one retroactive opinion over another by referencing substantial evidence, the ALJ's decision is upheld as to this issue.

## II.    ALJ Properly Gave Great Weight to Dr. Haynes' Testimony

1. Lack of Evidence During the Relevant Period does Not Discount Dr. Haynes'
   Testimony

Plaintiff first argues that the ALJ erred by relying on the medical examiner Dr. Haynes'
medical opinion because his diagnosis is not "substantial evidence." Plaintiff argues that based on
Dr. Haynes' own testimony, there is insufficient evidence for him to form a medical opinion, and
therefore any medical opinion he has does not constitute substantial evidence. ECF 22 at 16 (citing
Tr. at 540). Read in context, however, this statement simply highlights the lack of evidence from
any treating physician from October 2009 to December 2010, and Dr. Haynes' opinion that any
physician's projection of the symptoms of Huntington's disease during that time period are
necessarily speculative, his included. Plaintiff sought no medical treatment during the relevant
period: October 1, 2009, to December 31, 2010. Tr. 540. In fact, there is a significant gap in the
medical evidence from March 2002 to March 2012. Tr. 427-29, 489, 517. By itself, this comment
does not take Dr. Haynes' opinion outside the confines of 42 USC § 405(g), which requires that
each of the ALJ's findings must be supported by substantial evidence; it simply underlines that
any doctor's opinion in this case is a projection based on extrapolations of the existing medical
record.

At the hearing, Dr. Haynes acknowledged this predicament. The ALJ began his questioning
of Dr. Haynes by identifying the relevant period and asking, "[s]o with that in mind, is there
sufficient evidence of record for you to have an opinion as to the claimant's medical status during
that time period?" Tr. 540. Dr. Haynes responded, "Well, I guess so. I think [INAUDIBLE] I don't
have any notes from that period, but there's --." Tr. 540. The ALJ interjected, "Okay," and Dr.
Haynes continued, "So I guess the answer is no." The ALJ responded, "Okay. That's – I understand
what you're saying, sir." Tr. 540. Dr. Haynes then gave an overview of the record and went on to
offer his opinions about plaintiff's severe impairments, plaintiff's functional limitations during the

relevant period, and the accuracy of the other medical opinions in the record. Tr. 540-44. The ALJ gave Dr. Haynes' opinion great weight. Tr. 523.

"Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Although Dr. Haynes began his testimony with ostensibly conflicting statements about his ability to give an opinion, the ALJ responded that he understood what the doctor was saying, and reasonably considered the effect of the lack of evidence from the relevant time period, and the doctors' opinions based on their projections. Tr. 540. Dr. Haynes gave an opinion about plaintiff's functional limitations and specifically disagree with the conflicting opinions. Tr. 540-44. Read in context, Dr. Haynes was simply acknowledging the challenges presented by the lack of medical records within a year of the relevant period. The ALJ rationally interpreted Dr. Haynes' opinion.

2.  The ALJ Reasonably Relied on Dr. Haynes' Testimony

Plaintiff further contends that the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to rely on Dr. Haynes' testimony over that of Drs. Tuck, O'Leary and Bryan. As discussed in detail below, Dr. Haynes did not have a "false and incomplete understanding of the medical record," as plaintiff contends. *See* ECF No. 22 at 16. The ALJ therefore reasonably gave Dr. Haynes's opinion great weight.

Plaintiff's argument that Dr. Haynes' testimony was "false" and reflected an "incomplete understanding of the medical record" because he did not specifically mention Dr. Walter's Luria testing is incorrect. Dr. Walter did not opine that Luria testing was important for understanding plaintiff's condition in 2009-2010. Rather, Dr. Walter was under the mistaken impression that Dr. Haynes made questionable claims about plaintiff's cognitive functioning in 2017. See Tr. 895. As Dr. Walter's 2020 letter shows, he was not able to offer an opinion about the relevant period, so

Dr. Haynes' failure to mention or contradict any Luria testing Dr. Walter did does not render Dr. Haynes' opinions "false" or undeserving of great weight from the ALJ. Tr. 975. In sum, Dr. Haynes' opinion is not incomplete because he did not specifically mention a cognitive test performed more than six years after the relevant period, particularly when Dr. Walter seemed to believe the test did not allow her to assess plaintiff's limitations in 2010.

Nor was Dr. Haynes' opinion false or lacking in record evidence otherwise. The ALJ reasonably gave great weight to Dr. Haynes' opinion, which he formed based on the same treatment records as the other doctors to offer a diagnosis, and his physical examination of plaintiff in May 2017. Tr. 522. The ALJ cited those facts in choosing to credit Dr. Haynes' opinion and in rendering his decision. *See id.* As noted above, the Court must defer to the ALJ's resolution of conflicting medical opinion as long as those opinions are based in the record. Because Dr. Haynes' opinion was based in the record, and conflicts with other opinions as noted above, the Court will not disturb the ALJ's finding to give his opinion great weight, and to give no weight to the opinions of Drs. Tuck, O'Leary, and Bryan.

Ultimately, the record does not support plaintiff's assertion that Dr. Haynes's testimony was false or incomplete, and the Court therefore defers to the ALJ's determination that Dr. Haynes' opinions deserved great weight.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 30th day of July, 2021.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge